**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

CHRIS PHILLIPS,                                     No. CIV S-10-1941-CMK

          Plaintiff,

   vs.                                         <u>MEMORANDUM OPINION AND ORDER</u>

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

_____/

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial

review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

before the court are plaintiff's motion for summary judgment (Doc. 21) and defendant's cross-

motion for summary judgment (Doc. 22).

/ / /

/ / /

/ / /

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on May 14, 2008.  In the application, plaintiff claims that disability began on October 1, 2004.  Plaintiff claims that disability is caused by a combination of HIV/AIDS, depression, and anxiety.   Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on January 26, 2010, before Administrative Law Judge ("ALJ") William C. Thompson, Jr. In a March 4, 2010, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

> 1.    The claimant has the following severe impairments: HIV; anxiety; and obesity;
>
> 2.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in the regulations;
>
> 3.    After careful consideration of the entire record, the claimant has the following residual functional capacity: lift/carry 50 pounds occasionally and 25 pounds frequently; sit/stand/walk 6 hours in an 8-hour day; the claimant must avoid climbing ropes, ladders, and scaffolding as well as work at heights or around hazardous machinery; claimant is limited to jobs involving simple instructions and restricted public contact;
>
> 4.    The claimant is unable to perform past relevant work; and
>
> 5.    Considering the claimant's age, education, work experience, residual functional capacity, and testimony from a vocational expert, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on May 20, 2010, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## II.  SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following relevant evidence, summarized chronologically below:

April 12, 2002 – Records from Saint Mary's Regional Medical Center indicate that plaintiff was diagnosed with tendonitis.

January 21, 2004 – Records from Saint Mary's Regional Medical Center indicate that plaintiff was diagnosed with Bell's palsy, which is described as "a weakness or paralysis of the facial muscles due to an inflammation of the seventh cranial nerve – the facial nerve."  The document states that, while the cause of the disorder is unknown, it does not progress and recovery is usually complete within several weeks or months.

May 18, 2004 – Records from Northern Nevada H.O.P.E.S. reflect a follow-up related to HIV infection.  At the time, plaintiff was asymptomatic and physical examination was unremarkable.

June 24, 2004 – Records from Northern Nevada H.O.P.E.S. reflect a follow-up related to HIV infection.  At the time, plaintiff continued to be asymptomatic.

July 21, 2005 – The medical director of Northern Nevada H.O.P.E.S., Steven C. Zell, M.D., prepared a chart note indicating the following history:

> This is a 39-year-old gentleman who probably acquired HIV infection some time around 2004 due to the fact that he has been asymptomatic and has not had significant escalation of his viremia or a substantial drop in his absolute CD4 cell count.  We hade deferred initiation of antiretroviral therapy.  He is here for routine follow up to look at his most recent immune profile and make certain he is not harboring any opportunistic infections related to HIV disease.  Since his last visit with us at Northern Nevada H.O.P.E.S., he continues to do quite well and has not had any HIV related intercurrent illness to speak of.

A review of symptoms was "entirely negative today. . . ."  The note also indicates that, at the time, he was not taking any medication related to HIV infection.

/ / /

/ / /

3

July 16, 2008 – Ng Spadone, M.D., submitted a medical source statement.  Dr. Spadone states that his impressions are based on one office visit.  The doctor states that he saw plaintiff once in June 2007 incident to his main complaint of depression from having recently been in prison.  Without identifying any supporting objective findings, Dr. Spadone opined that plaintiff could occasionally lift/carry up to 20 pounds and frequently lift/carry up to 10 pounds.  He also opined that plaintiff could sit/stand/walk for six hours in an eight-hour day.  Again without noting any objective findings, Dr. Spadone concluded that plaintiff has a mental impairment resulting in low affect and decreased motivation.

August 18, 2008 – Agency examining psychiatrist Patrick Wong, M.D., conducted a mental status examination.  Plaintiff told the doctor: "I was diagnosed with agoraphobia."  Dr. Wong reported on the following history as conveyed by plaintiff:

> This is a man who reports he had a source of panic attack in 2000.  "It was after an incident."  He states that he pissed off some guys who were with the "wrong crowd" and they started harassing him.  They would follow him in their Harleys.  They would leave notes in his lunch box.  They would leave notes in his workplace.  Since then, he has been very anxious.  At one point, he thought they were going to kill him.  He no longer thinks that they are going to approach him, but the fear is still in the back of his mind.  The actual onset of the alleged terrorism began back in 1997.  The claimant has panic attacks where he has anxiety, tremulousness, tachycardia, extreme fear, and clamminess.  They tend to come on more in public.  He avoids the public quite a bit.  He does not have any nightmares or flashbacks.  He has no neurovegetative changes that would suggest a mood disorder.  Mr. Phillips reports no history of hallucinosis, bizarre beliefs, suspicions, or special powers.  Claimant has no history of life threatening psychological trauma and has no post traumatic symptoms.  Claimant denies any anxiety panic attacks or avoidance.  There are no obsessions or compulsions.  Bipolarity to mood is not suggested by the provided history.  Labile irritability and bouts of hyperactivity associated with impulsiveness, racing thoughts, and a decreased need for sleep are denied as well.

Plaintiff reported that he had been arrested in 2004 and served several years in prison.  He also told the doctor that he last worked in 2004 "but was released after about a year of work due to too many absences."  Based on a mental status examination, Dr. Wong diagnosed anxiety disorder not otherwise specified secondary to alcohol abuse and assigned a Global Assessment of

Functioning ("GAF") score of 60-70 on a 100-point scale.  Dr. Wong provided the following functional assessment:

> This is a man who has some anxiety symptoms due to alleged harassment in his distant past.  He claims to have significant agoraphobia and anxiety attacks as a result.  At this time, he globally is estimated to have a mild to moderate amount of impairment as a result of this.  His ability to carry out simple instructions is generally intact.  His ability to carry out complex instructions is generally intact.  His ability to relate to co-workers and the public is perhaps moderately impaired due to this anxiety pattern.  His ability to maintain an adequate pace and level of endurance is only affected by the anxiety that is provoked by his mild anxiety symptoms in public.  His ability to take direction from a supervisor is generally intact.  The probability of functional deterioration due to typical stressors is elevated due to this anxiety and his ability to adapt to changes in a workplace is mildly impaired as well.  Claimant at this time is capable of staying consistently aware of safety issues in the workplace.

> August 20, 2008 – Agency examining doctor Joseph Garfinkel, M.D., reported on a complete internal medicine examination.  Plaintiff's principal physical complaints at the time were back pain and bad headaches.  Plaintiff reported the following history:

> The claimant states that he has chronic, severe headaches secondary to a 2004 self-inflicted gunshot wound in a suicide attempt.  The bullet remains in his head.

> He has chronic back pain, upper and lower.  This started in 2004.  It was not work related.  It does not radiate.  It is worse with sitting up and standing.  It is better with medications.  He does not use assistive devices to ambulate.  He is not dizzy, sick to his stomach, or have bladder control problems.

Based on his examination, Dr. Garfinkel provided the following functional assessment:

> From an internal medicine standpoint, the claimant can lift 50 pounds occasionally and 25 pounds frequent.  The claimant can stand and walk for 6 hours in an 8-hour day.  The claimant can sit for 6 hours in an 8-hour day.  He must periodically alternate standing and sitting every 2 hours to relieve pain or discomfort.  He can occasionally climb, stoop, kneel, or crouch.  There are no manipulative, visual, communicative, or environmental limitations.

/ / /

/ / /

/ / /

1          September 13, 2008 – Agency consultative psychologist Uwe Jacobs, Ph.D.,

2    submitted a mental residual functional capacity assessment.  Plaintiff was found to be not

3    significantly limited except in the following areas where moderate limitation was found:

4    (1) ability to understand and remember detailed instructions; (2) ability to carry out detailed

5    instructions; (3) ability to maintain attention and concentration for extended periods; (4) ability to

6    interact appropriately with the general public; (5) ability to complete a normal workday without

7    interruptions from psychological symptoms; and (6) ability to set realistic goals or make plans

8    independently of others.  On an accompanying psychological review technique form, the doctor

9    noted no episodes of decompensation.  Dr. Jacobs expressed the following opinion regarding

10   plaintiff's mental functional capacity:

11               The clmt. can understand, remember, and carry out simple and some
             detailed but not complex instructions; he can sustain CPP for simple work
12           for a regular workday; get along with others and adapt to changes in the
             workplace.
13

14          June 15, 2009 – Chart notes from San Joaquin County Mental Health reflect that

15   plaintiff was not consistent with attending therapy appointments.

16          December 10, 2009 – Chart notes indicate that plaintiff "is responding well to

17   interventions, in handling some of his anxiety."

18          October 13, 2009 – Chart notes indicate that plaintiff expressed "paranoid-type

19   thoughts, hypervigilance."  It was noted that plaintiff "shows determination to continue with

20   therapy. . . ."

21          December 20, 2009 – The record contains a report on a psychological evaluation

22   performed by psychiatrist Patricia White, M.D., at plaintiff's counsel's request.  As to plaintiff's

23   mental status, Dr. White stated:

24               Mr. Phillips presented as a very tense and apprehensive middle-aged man
             who was articulate and fully cooperative with all aspects of the
25           examination.  He answered my questions in a relevant and coherent
             fashion.  His thinking was goal-oriented and he was able to elaborate his
26           remarks as needed.  He did not show any kind of memory deficit.  He

appeared to be of average intelligence.  He did not show any kind of psychoticism. . . .

His mood was one of depression and anxiety.  He worries about his health constantly.  He lacks energy and fatigues easily; he is socially isolated and is housebound for most of the time.  He no longer drives because he is so tense that his hands cramp on the steering wheel of the car.  He is uncomfortable around men but does maintain contact with a few women friends – mainly by telephone rather than by face-to-face contact.  He is anhedonic and spends his day resting, doing some laundry and dishes.  Sometimes he uses the treadmill in the back yard for exercise but he avoids walking or running in the street.  He is suspicious and distrustful around people and avoids contact with public places such as in the grocery store or at church.  He is distractible and concentrates poorly; he lacks patience for reading; he will watch television but quickly loses interest in any particular program.  His stance is one of paranoid anxiety.  He is quick to infer malevolent intent on the part of others in any interpersonal interaction he does have.  While in state prison in Nevada he was pressured for sexual favors by other inmates and he was put in protective custody a good deal of the time. . . .

His behavior is avoidant to a high degree.  Although he is relatively "safe" living in his parent's home, there are marked family tensions; he describes his mother as a controlling figure who is chronically depressed and his father as a passive onlooker who does not assert himself with his wife.

In conclusion, Dr. White offered the following impressions:

Mr. Phillips presents as a man whose mental and physical impairments, in combination, are severe enough to preclude him from substantial gainful activity at this time.  He is very likely to continue to be so impaired for a further period of twelve months or more.  He is in need of continued medication management and supportive psychotherapy for his psychiatric problems and of continued medical supervision of his treatment for AIDS.  The prognosis is guarded for significant improvement in the foreseeable future to allow him to return to full-time remunerative employment.

Dr. White's report was accompanied by a medical source statement.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

7

### III.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### IV.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to articulate sufficient reasons for not crediting the opinion of examining psychiatrist Dr. White; (2) the ALJ failed to address the opinions expressed in treatment notes; (3) the ALJ failed to articulate sufficient reasons for not crediting the opinion of Dr. Garfinkel that plaintiff needs to alternate positions between sitting and standing every two hours; (4) the ALJ failed to articulate sufficient reasons for not crediting the opinion of Dr. Wong that plaintiff has moderate

difficulties interacting with co-workers; and (5) the ALJ failed to incorporate specific moderate limitations in concentration/persistence/pace in hypothetical questions posed to the vocational expert.

### A.    Evaluation of the Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Plaintiff claims that the ALJ failed to properly evaluate the opinions of Drs. White, Garfinkel, and Wong, as well as opinions expressed in treatment notes.

1.      Dr. White

As to Dr. White, the ALJ stated:

> Patricia White, M.D., a psychiatrist, performed a one-time psychiatric evaluation of the claimant on 12/20/2009 (Ex. 22F).  The evaluation was requested by and paid by the claimant's attorney.  Dr. White diagnosed claimant with panic disorder with agoraphobia, severe; post-traumatic stress disorder, moderately severe; paranoid and avoidant personality traits; dysthymia, moderately severe; AIDS, active, under treatment; and hepatitis C stable at this time and not under treatment.  Dr. White opined that claimant's impairments are severe enough to preclude him from substantial gainful activity.  Claimant is very likely to continue to be so impaired for a further period of 12 months or more.  His prognosis is guarded for significant [improvement] in the foreseeable future to allow him to return to full-time remunerative employment.  Dr. White also completed a "Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment" for the claimant, in which she indicated that claimant's various mental abilities necessary for sustained employment are limited from the "mild" to the "marked" level (Ex. 22F/6-10).
>
> * * *
>
> I have given little weight to Dr. White's opinion (Ex. 22F).  The evaluation was made upon request and paid by the claimant's attorney.  Under SSR 96-5p, Dr. White's opinion that the claimant is precluded from substantial gainful activity is not entitled to controlling weight or special significance as the decision on this issue is reserved to the Commissioner.  I have evaluated the entire record and find that Dr. White's [opinion] is not supported by or consistent with the record as a whole.  Moreover, Dr. White appears to be motivated to assist claimant in securing the social security disability benefits.  Therefore, it is given little weight.

///

1    Based on a review of the entire record, it is clear that Dr. White's opinion is

2 contradicted.  In particular, neither Dr. Wong nor Dr. Jacobs opined that plaintiff's mental

3 impairment was as severe as indicated by Dr. White.  Thus, the ALJ meets his legal burden for

4 rejecting the contradicted opinion of an examining professional by setting forth the conflicting

5 evidence, providing an interpretation of the evidence, and making a determination.  See

6 Magallanes, 881 F.2d at 751-55.  The ALJ in this case did just that by outlining Dr. White's

7 opinions, contrasting them with those of the other doctors and the objective evidence,

8 interpreting the record, and making the decision not to accept Dr. White's contradicted opinions.

9    Plaintiff argues that the ALJ erred by observing that Dr. White's evaluation was

10 done at the request of plaintiff's counsel and that the opinion "appears to be motivated to assist

11 claimant in security social security benefits."  While plaintiff is correct that a medical opinion

12 may not be discredited solely on this basis, such was not the situation in this case where the ALJ

13 cited other reasons for discounting Dr. White's contradicted opinion.  Specifically, the ALJ

14 correctly noted that Dr. White's opinion of such severe mental impairment is not consistent with

15 the opinions of other examining and consultative sources or the objective evidence as a whole.

16    2.    Drs. Garfinkel and Wong

17    As to Dr. Garfinkel, the ALJ stated:

18    Joseph M. Garfinkel, M.D., performed a consultative internal medicine
     evaluation on 8/20/2008 (Ex. 9F).  Physical examination was normal
19    except for elevated blood pressure and straight leg raising test which
     produced pain in the back at 60 degrees right and 45 degrees left.  There
20    was no spasm in the paraspinal muscles of the neck or back.  Neurologic
     exam was intact.  Dr. Garfinkel's impression was chronic headache
21    secondary to a self-inflicted gunshot wound in 2004, and chronic back
     pain, most likely osteoarthritis (Ex. 9F).  He opined that the claimant is
22    able to lift and carry 50 pounds occasionally and 25 pounds frequently;
     claimant is able to stand and walk for 6 hours and to sit for 6 hours in an
23    8-hour day; claimant must periodically alternate standing and sitting every
     2 hours to relieve pain; claimant is able to occasionally climb, stoop,
24    kneel, or crouch (Ex. 9F/5).  Based on Dr. Garfinkel's opinion the DDS
     gave claimant the Medium RFC (Ex. 10F).

25

26 ///

11

As to Dr. Wong, the ALJ stated:

> Patrick Wong, M.D., a Board Certified Psychiatrist, performed a psychiatric consultative examination on 8/18/2008 (Ex. 8F). The mental status exam was normal. Claimant appeared clean and neat in his grooming. He was oriented in all spheres including person, place, time, and purpose of the examination. His affect was relatively calm and composed and his mood was neutral. Memory registration was 3 of 3 on the first attempt. Recall was 3 of 3 at five minutes. Remote memory was intact for past history. Dr. Wong diagnosed claimant with anxiety disorder, not otherwise specified; and secondary alcohol abuse with the GAF score of 60-70. Dr. Wong pointed out that claimant has a history of alcohol use. He drinks three 24-ounce beers when he is nervous and this happens maybe 3 or 4 times per week. He has blackouts and history of a DUI (Ex. 8F). Accordingly, Dr. Wong opined that claimant's ability to carry out simple and complex instructions are intact; claimant's ability to relate to co-workers and the public is moderately impaired. His ability to maintain an adequate pace and level of endurance is mildly impaired. Claimant's ability to take direction from a supervisor is intact. The probability of functional deterioration due to typical workplace stressors is elevated and ability to adapt to changes in a workplace is mildly impaired (Ex. 8F).

As to both doctors, the ALJ added:

> As for the opinion evidence, in addition to the objective medical evidence, I have considered statements from treating and examining physicians in assessing the severity of claimant's impairments. . . . I have given significant weight to the opinions of DDS medical consultants and the consultative internal medicine examiner [Dr. Garfinkle] in assessing the claimant's physical limitations (Exs. 9F, 10F, 14F, 16F). I have also given significant weight to the opinions of DDS psychiatric consultants and the consultative psychiatric examiner [Dr. Wong] in identifying the claimant's mental limitations (Exs. 8F, 11F).

Plaintiff argues:

> The ALJ indicated that he was giving significant weight to both these opinions in the hearing decision but yet he only credited parts of their opinions without any explanation. Dr. Garfinkle's opinion is contained in Exhibit 9F and Dr. Wong's opinion is contained in Exhibit 8F. The ALJ specifically indicated he was crediting both opinions in his decision. Tr. 17. In fact, the ALJ cherry-picked through the opinions without any explanation and also without meeting the specific and legitimate reasons articulation requirement. . . .

/ / /

/ / /

1   In particular, plaintiff contends that the ALJ tacitly rejected Dr. Garfinkle's opinion that plaintiff

2   must alternate between sitting and standing every two hours and Dr. Wong's opinion that

3   plaintiff is moderately impaired in his ability to relate to co-workers.

4         Turning first to Dr. Garfinkel, plaintiff is correct that the doctor opined that

5   plaintiff must alternate every two hours between sitting and standing.  Plaintiff is also correct

6   that, while the ALJ generally accepted Dr. Garfinkel's conclusions, the ALJ appears to have

7   rejected this specific opinion by not discussing this limitation or including any such limitation in

8   his residual functional capacity assessment.  As to Dr. Wong, once again the ALJ gave

9   significant weight to the doctor's opinion yet failed to discuss Dr. Wong's opinion that plaintiff

10  is moderately impaired in his ability to relate with co-workers or include such a limitation in his

11  residual functional capacity assessment.  Though the ALJ acknowledged a difficulty in relating

12  with the public, the ALJ seems to have rejected the further moderate limitation in plaintiff's

13  ability to interact with co-workers as opined by Dr. Wong.

14        The court cannot agree with defendant's conclusory argument that no error

15  occurred because "the ALJ's RFC findings mirror the functional limitations opined by Drs.

16  Wong and Garfinkel."  As discussed above, the ALJ must set forth specific and legitimate

17  reasons to reject the contradicted opinion of an examining professional.  In this case, the ALJ

18  rejected the limitations found by Drs. Garfinkel and Wong without providing any analysis

19  whatsoever to support doing so.  And it is plain that the ALJ's residual functional capacity does

20  not "mirror" the assessments provided by Drs. Wong and Garfinkel.  While they are similar, they

21  are not identical because the ALJ did not include the specific limitations discussed above.

22        The court finds that a remand is necessary to address Dr. Garfinkel's opinion that

23  plaintiff must alternate between sitting and standing every two hours and Dr. Wong's opinion

24  that plaintiff is moderately limited in his ability to relate with co-workers.

25  / / /

26  / / /

3.      Treatment Notes

The ALJ stated: "I note that claimant has not submitted any opinion from his treating doctors."   Plaintiff questions whether the ALJ even considered treatment records from the San Joaquin Behavioral Center "since there is no mention of Exhibit 19F in the hearing decision."   Further, plaintiff asserts that these records document GAF scores in the 40s, severe difficulty leaving his home, difficulty with focus and attention, difficulty following a line of questioning, "and much more."   According to plaintiff, the treatment providers at the San Joaquin Behavioral Center, while not doctors, are treating therapists who qualify as "other source" medical evidence under 20 C.F.R. § 404.1513(d), and that such evidence can only be discounted by providing specific reasons germane to each provider.

The ALJ need not discuss all evidence presented.  See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, he must explain why "significant probative evidence has been rejected." Id. (citing Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981).  Applying this standard, the court held that the ALJ properly ignored evidence which was neither significant nor probative.  See id. at 1395.  As to a letter from a treating psychiatrist, the court reasoned that, because the ALJ must explain why he rejected uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was controverted by other medical evidence considered in the decision.  See id.  As to lay witness testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court concluded that the evidence was properly ignored because it "conflicted with the available medical evidence" assessing the plaintiff's mental capacity.  Id.

Here, the court finds that the ALJ was not required to discuss the San Joaquin County records contained in Exhibit 19F because they do not constitute significant probative evidence.  To the extent plaintiff asserts that the San Joaquin County records demonstrate that plaintiff is severely disabled due to a mental impairment, the records are controverted by the weight of the other evidence of record.  Further, the records are not particularly probative given

14

1    that they do not document objective findings on mental status examination.  Finally, the records

2    tend to show that plaintiff actually improved over time with therapy.

3        **B.    Hypothetical Questions**

4             The ALJ may meet his burden under step five of the sequential analysis by

5    propounding to a vocational expert hypothetical questions based on medical assumptions,

6    supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v.

7    Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational

8    Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the

9    ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335,

10   1341 (9th Cir. 1988).

11            Hypothetical questions posed to a vocational expert must set out all the

12   substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v.

13   Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

14   limitations, the expert's testimony as to jobs in the national economy the claimant can perform

15   has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While

16   the ALJ may pose to the expert a range of hypothetical questions based on alternate

17   interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

18   determination must be supported by substantial evidence in the record as a whole.  See Embrey v.

19   Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

20            Regarding the vocational determination, the ALJ stated:

21        If the claimant had the residual functional capacity to perform the full
         range of medium work, a finding of "not disabled" would be directed by
22        Medical-Vocational Rule 203.28.  However, the claimant's ability to
         perform all or substantially all of the requirements of this level of work
23        has been impeded by additional limitations.  To determine the extent to
         which these limitations erode the unskilled medium occupational base, I
24        asked the vocational expert whether jobs exist in the national economy for
         an individual with the claimant's age, education, work experience, and
25        residual functional capacity.  The vocational expert testified that, given all
         of these factors, the individual would be able to perform the requirements
26        of representative occupations such as dishwasher . . ., hand packer. . ., and

                                              15

industrial cleaner. . . .

At the hearing, the claimant's representative asked the vocational expert to assume an individual who has the same age and vocational profile as the claimant and who is able to stand 20-30 minutes at a time and who has marked limitations in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. The vocational expert testified that given all of these factors the individual would not be able to perform any jobs. However, I find that claimant's subjective complaints as to the effects of his impairments are not fully credible. The claimant retains [the] residual functional capacity assessed [above].

Plaintiff argues:

Although the ALJ concluded that Mr. Phillips suffered from moderate concentration limitations, the ALJ's RFC assessment only provides that Mr. Phillips is limited to jobs "involving simple instructions." The ALJ did not analyze the *work-related effect of these limitations* on Mr. Phillips' ability to perform the cited occupations or any occupations. (emphasis in original). Under Ninth Circuit case law, reversal and remand is required. [¶] . . . The problem here is that the ALJ generally limited Mr. Phillips to work involving simple instructions which essentially limited him to unskilled work. The ALJ's lack of analysis of the work-related impact of the mental limitations and the failure to include these limitations in the hypothetical question requires reversal and remand. (citation omitted).

Even the state agency psychologists agreed that Mr. Phillips was more limited than just the complexity of the instructions. Indeed, the ALJ indicated he was crediting the state agency psychologist's opinion but then did not adopt the opinion. Dr. Jacobs specifically indicated that Mr. Phillips would have moderate limitations in the following areas related to concentration, persistence, and pace: the ability to carry out detailed instructions, the ability to maintain concentration for extended periods, the ability to complete a normal workweek and workday without psychologically based interruptions, and to perform at a consistent pace and without an unreasonable number of rest periods. Tr. 488-489. The ALJ did not incorporate any of these limitations into his RFC and instead simply limited the claimant to performing "simple instructions" which is generally interpreted by vocational experts as unskilled work.

The question of concentration, persistence, and pace centers on not just the *complexity of the task* but also upon the ability of the claimant to persist in the required levels of concentration to maintain full-time work. Under SSR 96-6p, the ALJ cannot ignore state agency medical expert opinions. The ALJ never explained why he was not crediting the "persistence and pace" part of the limitations and why he was only focusing generally on the concentration aspect of this category. . . .

/ / /

/ / /

1    The court finds no error with respect to the specific moderate limitations opined

2    by Dr. Jacobs.  While plaintiff is correct that Dr. Jacobs expressed the opinion that plaintiff had

3    moderate limitations in areas of concentration, persistence, and pace, defendant is also correct

4    that, notwithstanding these specific limitations, Dr. Jacobs' overall opinion was that plaintiff

5    "can understand, remember, and carry out simple and some detailed but not complex

6    instructions; he can sustain CPP [concentration/persistence/pace] for simple work for a regular

7    workday; get along with others and adapt to changes in the workplace."  Contrary to plaintiff's

8    characterization of the evidence, Dr. Jacobs' opinion is consistent with the ALJ's hypothetical

9    question with respect to concentration, persistence, and pace.

10    Though the ALJ's hypothetical question was accurate as to concentration,

11    persistence, and pace, the court finds that the hypothetical question does not necessarily describe

12    all of plaintiff's limitations.  As discussed above, the ALJ erred by not providing reasons for

13    silently rejecting the limitations opined by Drs. Wong and Garfinkel.  If those are indeed valid

14    limitations that the ALJ should have accepted, then it was error not to include them in the

15    hypothetical questions posed to the vocational expert.

16    / / /

17    / / /

18    / / /

19    / / /

20    / / /

21    / / /

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

**V.  CONCLUSION**

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment (Doc. 21) is granted;

2.      The Commissioner's cross motion for summary judgment (Doc. 22) is denied;

3.      This matter is remanded for further proceedings consistent with this order; and

4.      The Clerk of the Court is directed to enter judgment and close this file.


DATED: July 14, 2011

_Craig M. Kellison_
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

18